May it please the Court, good morning, I'm Sherrilyn Budd on behalf of Mr. McCullough. I have eight minutes to, I would like to reserve. I intend to address a portion of the 412 motion as it pertains, or the 412 issue as it pertains to my client, Ms. Ramirez, Mr. Lara, and Mr. Villalba, I believe all have a different aspect in considering the 412, as well as I intend to address a portion of the argument regarding constructive amendment of the indictment. First as far as the 412, this Court should reverse the District Court and rule that the evidence pursuant to Federal Rule of Evidence 412. And what we wanted to admit were the alleged victim's prior and subsequent acts of prostitution. How would that be relevant? It's relevant in this particular situation as it pertains to McCullough, because the prior and subsequent acts of prostitution were going to be used to establish a course of conduct for this alleged victim. It was our specific theory that the alleged victim in our case was actually the one who was doing the prostitution, the advertising, not my client, during that specific period of time. So just as we do in other cases where we show course of conduct by what somebody does before and after, how she advertised, what she said, who her clients were, how she conducted herself, the jury would have been able to evaluate before, during the alleged time frame, and after. And they could have said, do we believe her, that she was forced to prostitute or that she was prostituting against her will during that time frame? Or does this look exactly like what happened before and after? And for that reason, sir, that's why it's relevant. And it's particularly concerning in McCullough's case because the alleged victim in that case is really the only person who had any testimony to bear against McCullough. So her credibility, the jury's ability to look at what she had to say and weigh that against the course of conduct was almost the most important thing that they could have evaluated. During the cross-examination, weren't you able to otherwise get before the jury the familiarity of the witnesses with that internet page, et cetera? Yes, sir, we were. The problem was we weren't able to tie it all up. We weren't able to, at the end, make it make sense to the jury to explain to them our complete defense. Because we couldn't say she had prostituted before, she had advertised, she was running her own business, and she continued to run her whole business through the time that she stayed with Mr. McCullough all the way up till after she left Mr. McCullough. You don't think the jury would have been able to surmise how she would be familiar with that internet page? No, sir. I think that there were probably some individuals that were wondering, how does this all tie together? I understand that. I'm just saying, you don't think the jury, given the full panorama of this series of events, might fill in their cranial crevices, this person is familiar with this internet page, one doesn't typically know about that page, et cetera. I'm not saying that washes away the argument you're making. Just saying the jury is pretty alert, right? Yes, sir. They might have been able to surmise that, but what they might not have surmised was how this related to what our argument was during the alleged timeframe, because we couldn't say it. Sir, before some of my time runs out, I'd like to just briefly mention the constructive amendment of the indictment. We believe the court should reverse the district court and rule that the district court erred by constructively amending the indictment in this case, specifically because it permitted a conviction for a materially different theory in this particular case. What's the best case you rely on? I mean, we have a lot of constructive amendment arguments that are made to us, they aren't often all that successful, but so what's the . . . I know what your argument is, but what's the strongest case you have from the Fifth Circuit or otherwise that fits the argument you're making here? Sir, I don't know that there is a particularly strong case from the Fifth Circuit that fits our argument, however, what I would say is in this case, I don't believe that Copeland is applicable because that specifically discussed strict liability imposed by the statute and whether or not it was a violation of due process. The argument as to constructive amendment of the indictment was not considered or made during Copeland. So, if you were right on this issue, what would our . . . given that there's no precedent that's strong on it, what would our holding from this panel be on the constructive amendment argument in this case? It would be that it should have been indicted as a reasonable opportunity to observe because then we would have known what the jury relied upon in indicting and arriving at its verdict. Thank you, sir. All right. Thank you, ma'am. All right. Mr. DeLauro? May it please this Honorable Court. My argument today will be focused on the 412 argument as it relates to Dion Lockhart and to a very lesser extent the other members of my co-counsel for the main reason that in this case, Dion Lockhart had the least amount of force or coercion evidence of all four of the defendants. He offered well over 100 documents from the publication called Backpage and from several other magazines where the only victim he was tied to was a girl named A.G. A.G. took the stand and was able to testify that he never took any act of violence against her. She also said he rarely told her what to do and in addition, he had the shortest amount of time involved in the conspiracy of all the defendants because she went to another of the co-defendants to do work. And the reason 412 is so important to him is because the entire case at some point, at several points actually throughout the trial, were linked to A.G. A.G. was the first person to be found through the Backpage ads out prostituting. She was arrested several times subsequent to the arrest of the clients and the government was able to present testimony concerning all this and I believe not just once but twice we approached the Honorable Judge Martinez to say, I believe they've opened the door both with an ancillary incident that had to do with the counsel I replaced, a statement that was given by A.G. saying that he had had, he being Dion Lockhart, had no involvement whatsoever in forcing her to do what she did. Yet we offered well, I believe the number was 183 documents of advertisements that she continued to do both pre, during and post indictment. It also became an issue involving, as I said, former counsel and it also became an issue as the government presented another attorney who is representing her in a court for young ladies called the Esteem Court, a court for ex-prostitutes. However we were not able to get into a lot of that evidence and it severely restricted our right, especially as far as Mr. Lockhart goes, it severely restricted his right to cross-examine these witnesses and to establish in front of this jury that the burden under this statute is rather high. You have to be able to show those kind of, those kind of actions and those kind of coercions to prove this case under the indictment and without those important things we were not able to do that. It became a very difficult situation to continually having to wonder if they were going to put up another witness or another witness. They were allowed to testify but they just could not use the word former prostitution and any time we tried to get into the subject matter, we approach and it was denied and I don't believe in my heart of hearts that 412 was drafted or should apply to these kinds of cases in the sense that they severely hampered the way you defend them and much to our surprise, the public defender's office that we sometimes turn to, to look through the other circuits to see how their trials go, there are very, very few of these cases that actually go to trial and so when they finally do get to trial, to restrict that kind of evidence because that evidence, I would assert to the honorable court, is not to protect their reputation but it does certainly go to the fact that they are already predisposed, they are still in the act of prostitution and it takes away some of the effort that you have of having the government prove that they are not coercing and I think that harmed Mr. Dion Lockhart immeasurably. I can't imagine that the trial would have been the same exact result than if they had not had the evidence there and we offered it twice. It was as early as 2010 and as late as seven months before trial with those back page ads specifically for AG. That's how the FBI found this young lady that led them to this prosecution. And I feel that the 412 argument, as well as my other co-counsel, should be looked at and the case should be reversed. Thank you judges. All right. Thank you, sir. Ms. Villalba. Good morning, honorable members of the panel. It's a pleasure to appear before you this morning. My name is Miguel Villalba. Most everyone calls me Michael. I attended Spring Hill College down the road and no one ever attempted to pronounce my last name back in those days. Your honors, I represent this morning Emmanuel Lockhart, the younger brother of Dion Lockhart, the brother whom the two case agents, Clinton Smith and Julio Lara, specifically exculpated from any direct involvement with the claimed victims in this case, such that he was never included in any substantive count, only in the conspiracy count, and had to sit through each and every fragment of evidence touching upon the horrendous beatings and so forth that were taking place. The government takes comfort from the fact that in one occasion he was claimed to have been present, but I don't think this or any other court has said that sufficient involvement to include him in a conspiracy for that. I'll focus briefly on the severance issue with leave of the court, and I'll move on to the sentencing issue with respect to the evidentiary hearing that was requested at sentencing or prior to sentencing. With regard to the severance issue, I believe that the cases of Irwin as well as the court's From the Irwin standpoint, the court's analysis begins with how central is Grace Davis to the happenings of this case, to the conspiracy itself. She had been charged with money laundering. She was acquitted of two of those charges and ultimately was convicted on false statements to federal authorities, yet she, because she was in the periphery, yes, was in the indictment for purposes of a Rule 8, joined her, but when it came time to analyze as it progressed the case, it was obvious, this court pointed out, that the evidence against her co-defendants was mountainous and very little of it related to her or could even be used against her. Similarly, in our case, we have a defendant who was not charged with any substantive act such that he cannot be charged or accused of having done anything that his co-defendants were accused of, and yet he has to sit there, like she did, and like Officer Warren did in McRae, and even though Officer Warren was involved, arguably, in despicable act of killing an otherwise innocent man or excessive force, still, he had to sit through the charred body testimony and the falsification of the second report testimony. All of that impacted him. I think that our brief is replete with respect to that. Remember, honorable members, that this is the only defendant that both Clinton Smith, Julio Lara, the two case agents said had nothing to do with it. The other witnesses, or I should say, never involved themselves in the beatings or sharing in any of the profits or recruiting or enticing. And the same thing with the witnesses that testified. Well, there's nothing unusual of some person in the midst being charged with a conspiracy and there not being, you know, same evidence as others on the substantive counts, etc., etc. So, what's your argument? That the government had no evidence to connect the younger brother to the conspiracy, he was in the wrong place at the wrong time, he was there with his brother, he didn't know what was going on? Not at all, your honor. That would be disingenuous. The reality is that what the government proved in this case was nothing more than presence. That's what the government proved in this case as regards his knowledge of what was going on. There was never any testimony of his involvement. The Parada-Talamantes case, the Singletary case, they all speak to that mere association aspect of what happened here. Here instead of a fraternity as was referred to in the McCrae case, we're talking about a gang. And we're talking about a gang that all of whom presumably were operating in joint concerted effort for a common purpose and it wasn't like that. It wasn't developed either at the evidentiary hearing. Thank you very much. All right. Thank you, sir. All right. We'll hear from the government. Ms. Lockwood. Thank you, your honor. I'm Mellon Lockwood representing the United States. I'd like to discuss the evidentiary issue, the 412 issue. They complained that prior and subsequent acts of prostitution were not admitted into evidence and it's the government's position that that's just not relevant. One, the substantive charges, there were two substantive charges. One was sex trafficking, a minor, a minor even if a minor and in fact a couple of these girls did initially consent to be prostituted but you can't prostitute a minor because a minor cannot consent. So even if she willingly agreed to be prostituted, these men have still violated the law. So her prior prostitution, excuse me, is just not relevant. On the issue of coercion, there's not a Fifth Circuit case that addresses it but there's an Eighth Circuit case that addresses it. And the issue is not whether the person prostituted, a person could go and find a prostitute, have them willingly start to work for them but if then they apply coercion and beat them and take all their money and keep them virtually prisoner, then they have again committed that act. So as the Eighth Circuit said, it's not really relevant whether that person was a prostitute. What's relevant and what the issue is in the case is whether that person was coerced or forced. There was a good opportunity to cross-examine these witnesses. They, you know, a number of these young women said that they knew how to post ads on Backpage. They even taught some of these men how to do it. There was a statement by Mr. Gray to some of the others, not including Mr. McCullough, where he said, we have to move out of the dope business and let's move into this kind of business. So but these women were cross-examined. You know, it did come out that they had posted on Backpage. One of the victims said she met Mr. McCullough and Mr. Gray in a hotel room and she had $700 in her possession and she was a 15-year-old runaway and she had posted on Backpage. So clearly the jury knew that these young women had done something for that money. On the issue of constructive amendment, this court looks at whether the instructions were correct. Here the instructions followed the law. But the problem is the prosecutor emphasized the erroneous instruction in closing argument. Yes, Your Honor. He did. That's correct. He did emphasize it. It seems to me that makes it a really tough issue for you. It makes it more difficult. It's not an easy issue, Your Honor. But I think the essence of what this court looks at is, was Mr. McCullough, and he's the only one that's arguing this constructive amendment issue, was Mr. McCullough really And then when he meets her, he says, you look familiar to me, and then he didn't ask her any more about where she came from. So you know, where we have this direct evidence that he absolutely knew, it's hard to come to the conclusion that he was convicted of a crime that's different than the one he was charged with. So are you saying it's not error or are you saying it's harmless error? I guess I'm saying both to cover myself, Your Honor. And I do want to point out, Ms. Bunn didn't talk about it, but there is a Ninth Circuit unpublished case that I cited in my brief that does say that under this circumstance there's a constructive amendment regarding the substantive count. There's another case, a Ninth Circuit unpublished case, that says there's not a constructive amendment when a conspiracy is charged. So I wanted to make that clear to the Court that that is out there. I could find no Fifth Circuit case or any other Court of Appeals case that addressed this particular issue. I guess we'll have one now, won't we? Yes, sir. Yes, sir. But again, I would argue that the instructions were correct and that really the evidence was so overwhelming. So I do make that harmless argument that it really was harmless because he clearly knew that she was a child and he had worked with her and he was her corrections officer. So with regard to Dion Lockhart, it's just clear that there was coercion. He met A.G. in a hotel room and she said she wanted to leave and he said, I'm not going to take you. And he had picked her up. She had come with Lockhart's niece and so she came to the hotel room not for great reason. She came to rob people and to make money and to pretend to be a prostitute, but she said she wanted to leave and he said, you're not leaving. And there were two girls in a hotel room with these grown men and he said, I'm not going to take you. She said she felt like she had to do that. And again, with Dion Lockhart, there are two charges, two substantive charges in the conspiracy. So regarding whether she was a minor, whether she felt coerced or not is not relevant. But there is evidence and I think the jury found that she did feel coerced, that she was around all these men and felt like she had no choice but to prostitute for Dion Lockhart. With Emmanuel Lockhart, he is just charged with the conspiracy, but he was clearly more than just present. He was there when Dion Lockhart met A.G. He shared hotel rooms with these men. The testimony at trial proved that he was prostituting a girl named Kenzie and that was someone I believe the investigators couldn't find. They shared expenses for hotel rooms. They used his phone and his computer to post the ads. It was clearly a lot more than just being merely present. Counsel Oppsitt argued that, forget the witness's name, the agents exculpated Emmanuel Lockhart. He didn't say it that way, but basically says your own witnesses sort of put him removed. What do you say to that? Your Honor, I do believe there was testimony where the agent said, I don't have any evidence that he was actually prostituting one of these three girls that testified. But I don't think the agent said he was innocent of conspiracy, just that there was no evidence that he was prostituting any of the witnesses there. But there was, I mean the record's pretty clear that he was prostituting a girl named Kenzie for a while and that he did share in these expenses. He was there when Mr. Gray beat one of the girls. There's a video that he's apparently on where Mr. Gray is beating a girl and showing it to this other man saying, this is how I keep these girls, how I keep them in line. You know, that was his video lesson for the others, not for Mr. McCullough. Mr. McCullough wasn't in that situation, but Mr. Lockhart was. Mr. Emmanuel and Dion Lockhart were involved in that. If there are no other questions, then Your Honor, I'm. Thank you. All right. Thank you. All right. Rebuttal. Back to you, Ms. Bunn. Sorry. I just wanted to mention as well that court-appointed counsel Maria Ramirez is here on behalf of Mr. Richard Gray and adopts these arguments as well. Sir, as far as the constructive amendment is concerned, the issue is not whether or not he was convicted of a different crime. The issue is that the jury charge permitted a conviction for a materially different theory. In this particular situation, it's impossible to know if the grand jury would have charged McCullough on a reasonable opportunity to observe. The government went through a series of facts that they said proved knowledge, but what this court so adequately pointed out is, so why argue the erroneous instruction if everything in the case proved actual knowledge? And the bottom line is because the government at trial wasn't sure if they had got there, so they flipped and they went to this reasonable opportunity to observe. And it's for that exact reason that this court should reverse because if not, it allows in these situations for the government to pick a theory at trial and then potentially on appeal argue a different theory to basically save the conviction. In this case, there were just as many people who said that the ANJ looked different. She had been carded. She was partying. She was doing things that older people would. So to say knowing was proved, it just wasn't so. The reason the reasonable opportunity to observe was argued is because the government knew they hadn't got there. Yes, sir? Some arguendo, you prevail on the constructive amendment in that narrowest striation. There's a lot of evidence in the case, so what does that get you? I don't mean you personally, but bottom line. I mean, even assuming prevailing on constructive amendment on that narrow point with all the other evidence, I mean, what does that result in? Sir, I believe it results in reversing the entire decision because at this point, there was so much predicated on that particular charge, it's impossible to know whether the McCullough was convicted of because of how those two merge and what he was sentenced for. I'm not too sure about that. So it affects more than count seven? Sir, my argument would be that you can't separate the two because they are so closely aligned by virtue of the fact that there was a constructive indictment for charge seven that you necessarily need to go back to the beginning and only argue the conspiracy because the two could have melded in the face of the jury. Well, I mean, I get your argument. There's a whole lot of evidence in this trial record. I mean, I haven't read the full record, but there's a lot in this fully tried case. I mean, I get your argument saying whether you prevail or not on the constructive amendment, but that's why I asked the question. My sense is that even if you went on that count, that it's not plausible possible to look at the whole record with all the evidence that was put in, et cetera, et cetera, and not discern yes, error, but, and even reverse on that, but that it didn't wash the whole case. No, go ahead. Sir, McCullough's position would be that that goes to our sufficiency of the evidence argument. We don't believe there is a sufficiency of the evidence. Thank you, gentlemen. Okay, thank you. Mr. Boulware. In rebuttal, your honors, I would call the court to recognize the testimony of Brandon Shapiro, co-defendant who pled and testified against all four of the defendants in this case, and that's a record on appeal 1546. He testified that she was, that AG in relation to Medeon Lockhart was ready to prostitute within an hour of her showing up. She was introduced, as the court correctly said, by her cousin who knew Mr. Lockhart. In addition, they also testified that her ID was checked, which counters the government's argument. That's the record of appeal 1569, that she appeared to be 18 at the time. He also testified very clearly and very concisely that there were never any acts of violence or any coercion, either at the beginning nor at the end, when she, AG, decided to leave him and go to work for Mr. Brandon Shapiro. As far as all the defendants in this case, the limited amount of evidence was for Mr. Deon Lockhart. In addition, the evidence that was kept out had the potential of changing the verdict in this trial. Thank you, Your Honor. All right. Thank you, sir. Counsel, Mr. Villalaba. I may have butchered it, but I'm still going to try it. Villalba. It's a good, hearty Irish name, Judge. Okay. Whatever you say. Go ahead. Thank you. Very briefly, the argument that Mr. Lockhart, Emmanuel's involvement was more than presence is not supported by the record. Even Judge Martinez said there is no direct evidence against you, and I understand that, that you either violently treated these young ladies or that you pimped them. Taken in context, all of this dearth of evidence as against him, substantively, ultimately, a reasonable inference can be drawn that at some point he withdrew from active participation in what was the underlying conspiracy, an ongoing conspiracy. Why? Because all, for the two years that Clinton Smith investigated this case, he could never find that he had rented, in fact, a hotel room. Now, it may have been because he didn't attend the pre-trial conference before with the other witnesses, all of whom grooved their testimony to the fact that he was present and so forth. But the reasonable inference is that he was not there, that at some point, like Mata and Rodriguez in the McCray case, excuse me, the Cortinas case, they were no longer actively participating. And even though they were finitely charged temporally by indictment and we were not, the dearth of evidence of his activity in furtherance of this conspiracy puts him in the same position, if you will, as Mata and Rodriguez. All right, let me ask you this. Yes, sir. Where in the record would we find something pointing to him departing the conspiracy? Your Honor, the fact that nobody... No, no, no, no. Listen, don't give me the argument. I got that. I'm saying, where in the trial? I'm looking at the record. I mean, if you say he left the conspiracy or he exited or whatever, I'm just saying, just tell me what part of the trial, what evidence would we be looking at to find support for the argument that you just made? Is the court's question, was that ever raised to the jury? Is that another way of phrasing the court's question? No, I thought I heard you say, you know, government says, yeah, he was there, blah, blah, blah. But, you know, there's no direct evidence on his culpability. And I thought I heard you saying, well, you know, he somehow moves out of this milieu at some point to... What I am saying, Your Honor... All right. And so I'm saying, where in the record? We read this whole record. Where will we get to the point where we can be persuaded that this client exited the conspiracy and not stayed in the way to govern us? So I'm just asking you for a record location, not the argument. Your Honor, I would not be able to point to a place where he said, I don't want any part of this, if that's what the court's question is. However, I would point out to the fact that he did not in any way... No evidence showing his ongoing continuation is pretty similar to what we saw in the Cortina's case with respect to the supplier being replaced. It is by inference to answer the court's question directly that... And it's the only inference that you can draw from the darth of evidence. I hope I answered the court's question. Oh, you did. The other side could argue that the jury could draw another inference. But you've helped me. You've helped us. Just want to know. We're looking for a lot of evidence. It's a big trial. There's a lot of stuff here. So part of the argument is just helping us to find what you might want us to find. Thank you, Your Honor. Thank you. All counsel arguing, all of you are court appointed. We do appreciate, not just our panel, but the whole court, the service that court appointed counsel engaged in these cases. Cases like this one in particular are big. There's a lot of moving parts, a lot going on. We appreciate the briefing and the argument in coming and the representation of your clients. Thank you. All right. Thank you to counsel. Thank you to the government. The case will be submitted.